UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EMIL CANGRO,

                    Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF
FINANCE, et al.,

                    Defendants.

---

No. 23-CV-10097 (LAP)

OPINION AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is the motion to dismiss Plaintiff Emil Cangro's Amended Complaint, (see dkt. no. 4 ["AC"]), filed by Defendants New York City Department of Finance ("NYCDOF") and The City of New York (the "City") (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6). (See dkt. no. 15 [the "Motion"].)[1]  Plaintiff opposes the Motion. (See dkt. no. 22 ["Opposition" or "Pl. Opp."].)[2]  For the reasons set forth below, Defendants' Motion is GRANTED.

---

[1] In support of their Motion, Defendants filed the Declaration of Matthew V. John Jr. and Exhibits A-F attached thereto, (see dkt. no. 16), a Memorandum of Law in Support of their Motion, (see dkt. no. 17 [the "MOL in Support"]), and a Reply Memorandum of Law in Further Support of Their Motion, (see dkt. no. 23).

[2] In addition to his Opposition, Plaintiff has filed the Declaration of Neil Torczyner and the exhibits attached thereto, including an affidavit signed by Plaintiff. (See dkt. no. 21.)

I.  **Background**

**A. Factual Background**

Emil Cangro ("Plaintiff") is an employee of the NYCDOF, a department of the City. (See AC ¶ 1.) Plaintiff alleges that he is employed by NYCDOF's Division of External Affairs ("DEA") as a Principal Administrative Associate. (See id. ¶ 13.) The DEA is located at 1 Centre Street in New York, New York. (See id. ¶ 3.)

Plaintiff was diagnosed in or around 2016 with COPD and bronchiectasis as a residual effect of being exposed to toxic dust following the September 11th terrorist attacks. (See id. ¶¶ 9, 12.) As a result of this exposure, Plaintiff has developed severe asthma and a loss of lung capacity. (See id. ¶ 11.) Sometime around the start of the COVID-19 pandemic in 2020, Plaintiff began working for the Defendants remotely because "his medical condition put him at severe risk of COVID infection and related complications." (See id. ¶ 14.) Although Plaintiff does not say so explicitly in his Amended Complaint, the Court infers that he was working full-time in-person before then. (See generally id.) On March 14, 2022, the City's Equal Employment Opportunity office ("EEO") issued Plaintiff a revised accommodation that permitted him to work remotely three days per work and in-person at the 1 Centre Street location two days per week. (See id. ¶ 15.)

On March 17, 2022, Plaintiff filed an accommodation request with the EEO asking that he be allowed to work from the Staten

Island Business Center ("SIBC"), another office location for the City, rather than the 1 Centre Street location. (See id. ¶ 16.) Plaintiff's request was based on (1) the difficulty commuting to and from the 1 Centre Street location while wearing a mask on public transit, which was required at the time, and (2) climate control issues and the lack of ventilation in the 1 Centre Street location that exacerbated his respiratory issues. (See id. ¶¶ 17-18.) Plaintiff alleges that his request was supported by his manager and reports from his doctor. (See id. ¶¶ 19-20.)

On June 7, 2022, the EEO denied Plaintiff's March 17 request. (See id. ¶ 21.) Plaintiff timely appealed the decision but Defendant NYCDOF affirmed the denial, stating that "[w]hile reasonable accommodations may be provided to enable [him] to satisfy the essential functions of [his] job, [Plaintiff's] commute to work is separate from [his] ability to perform [his] essential duties." (See id. ¶ 22.)

On June 22, 2023, over a year after his initial request, Plaintiff filed another request with the EEO, this time asking to work from home permanently. (See id. ¶ 23.) His request was based on medical reports from walking and breathing tests that demonstrated he cannot walk more than ten feet without losing his breath, which presented a problem for Plaintiff commuting to and working in the 1 Centre Street location. (See id. ¶¶ 24-25.)

At an unspecified time, the EEO denied his request to work from home permanently. (See id. ¶ 27.) Plaintiff then amended his request, asking to work from home three days per week and at the SIBC twice per week. (See id.) Plaintiff alleges that, at some time after this submission, he was berated by an investigator working for Defendant NYCDOF. (See id. ¶ 28.) He says that there was no cooperative dialogue about his request. (See id.)

On August 11, 2023, the EEO denied Plaintiff's amended submission and indicated that he was required to work in-person at the 1 Centre Street location five days per week. (See id. ¶¶ 29, 33.) On the same day, the EEO denied his request to work from the SIBC. (See id. ¶ 32.)

On August 17, 2023, Plaintiff sent a letter through counsel to Defendants appealing the EEO's August 11 denial. (See id. ¶ 34.) On September 5, 2023, the appeals officer granted Plaintiff's appeal in part, allowing Plaintiff to work from home two days per week, but affirmed the denial of his request to work from the SIBC, stating that there was no "reasonable accommodation that can be made as there is no External Affairs office in the [SIBC] and such a transfer would not actually address [Plaintiff's] inability to walk more than 10 feet as [Plaintiff] would still have to walk more than that amount to access the building and the employee cubicles/work area." (See id. ¶¶ 35-36.)

### B. Procedural History

Plaintiff filed his Amended Complaint on November 16, 2023. (See dkt. no. 4.) Plaintiff alleges Defendants (1) discriminated against him under the Americans with Disabilities Act ("ADA") by refusing to let him work either from home permanently or from the SIBC, (2) failed to grant a reasonable accommodation under the ADA and New York City Human Rights Law ("NYCHRL") by denying his request to work either from home permanently or from the SIBC, and (3) failed to engage with him in the cooperative dialogue required under the NYCHRL. (See id. ¶¶ 39-74.) Defendants filed their Motion on February 9, 2024. (See dkt. no. 15; see also MOL in Support.) Plaintiff filed his Opposition on March 15, 2024. (See Pl. Opp.) Defendants filed their reply brief on March 22, 2024. (See dkt. no. 23.)

## II.  Legal Standards

### A. Pleading Standard Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" In re Actos End-Payor Antitrust Litig., 848 F.3d 89, 97 (2d Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. That

"standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Palin v. N.Y. Times Co., 940 F.3d 804, 810 (2d Cir. 2019). Evaluating "whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

When considering a motion to dismiss, the Court "accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor." Palin, 940 F.3d at 809 (internal quotations and citations omitted). The Court is not required, however, "to credit conclusory allegations or legal conclusions couched as factual allegations." Dane v. UnitedHealthcare Ins. Co., 974 F.3d 183, 188 (2d Cir. 2020) (ellipsis omitted). "Accordingly, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (cleaned up).

## III. **Discussion**

### A. Plaintiff's ADA Discrimination Claim

Plaintiff alleges that (1) removing his full-time remote work accommodation and/or (2) requiring him to work in the 1 Centre Street location constitute discrimination under the ADA. (See AC ¶¶ 15, 32-33, 46-47.) To state a plausible claim for discrimination

6

under the ADA, a plaintiff must adequately allege that: (1) his or her employer is subject to the ADA; (2) he or she is disabled within the meaning of the ADA or perceived to be disabled by his or her employer; (3) he or she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) he or she suffered an adverse employment action; and (5) the adverse action was imposed because of his or her disability. See Dooley v. JetBlue Airways Corp., 636 F. App'x 16, 21 (2d Cir. 2015).

Defendants do not dispute that they are subject to the ADA, that Plaintiff is disabled within the meaning of the ADA, or that he was otherwise qualified to perform the essential functions of the job. (See generally MOL in Support.) The primary elements of Plaintiff's discrimination claim that Defendants dispute are that they did not subject Plaintiff to an adverse employment action and, even if they did, the Plaintiff has not sufficiently pleaded a discriminatory motive for such adverse action. (See MOL in Support at 8.) Because the Court agrees that Plaintiff has failed to plead sufficient facts creating a plausible inference that he was subject to an adverse employment action, it dismisses Plaintiff's ADA discrimination claim.

To qualify as an adverse employment action, the employer's action toward the plaintiff must be "materially adverse" with respect to "the terms and conditions of employment." See Caskey v.

Cnty. Of Ontario, 560 F. App'x 57, 58-59 (2d Cir. 2014) (citing Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004)). It must be "more disruptive than a mere inconvenience or an alteration of job responsibilities[.]" Fox v. Costco Wholesale Corp., 918 F.3d 65, 71 (2d Cir. 2019) (internal quotations and citations omitted). Examples of materially adverse changes include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id. at 71-72 (internal quotations and citations omitted).[3]

Failing to accommodate an employee is, by itself, not sufficient for establishing an adverse employment action. See Sosa v. N.Y. City Dep't of Educ., 368 F. Supp. 3d 489, 496 (E.D.N.Y. 2019). To constitute actionable discrimination, the failure to accommodate must result in some other adverse employment action that materially alters the employee's working conditions. See Kirkland-Hudson v. Mount Vernon City Sch. Dist., 665 F. Supp. 3d 412, 457 (S.D.N.Y. 2023) (citing Parker v. Columbia Pictures Indus., 204 F.3d 326, 328 (2d Cir. 2000)) (holding that the

---

[3] This is the same analysis courts apply when faced with a claim for discrimination under Title VII. See Simon v. City of New York, 2019 WL 916767, at *5 (S.D.N.Y. Feb. 14, 2019); Dooley, 636 F. App'x at 21.

plaintiff failed to allege that she suffered an adverse employment action where she failed to plead any facts indicating the accommodation denial "result[ed] in an adverse employment action" (emphasis added)).[4]  Indeed, "'a failure to provide a reasonable accommodation in and of itself does not equate to an adverse employment action' in the disability discrimination context." Id. (quoting Berger v. N.Y. City Police Dep't, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018)).

From Plaintiff's Amended Complaint, it is not completely clear what adverse employment action Plaintiff alleges as the basis of his discrimination claim. Reading the Amended Complaint in the light most favorable to Plaintiff, he appears to allege that the adverse action Defendants imposed on him was requiring him several times to work in-person either two or three days per week at the 1 Centre Street location after accommodating his remote work between March 2020 and March 2022. (See AC ¶¶ 14-15, 21, 35, 44-48.) He then seems to allege that this materially affected his

---

[4] In Kirkland-Hudson v. Mount Vernon City School District, the Court was assessing a disability discrimination claim brought under the New York State Human Rights Law ("NYSHRL"). See 665 F. Supp. 3d at 456-57.  However, because plaintiffs are required to plead the same elements under ADA and NYSHRL discrimination claims, the court's conclusion applies with equal force here. See id. ("The elements of a NYSHRL discrimination claim are generally the same as those under the ADA." (cleaned up) (internal quotations and citations omitted)); Piligian v. Icahn Sch. of Med. at Mount Sinai, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) (same).

working conditions by forcing him to work in an unhealthy location, the 1 Centre Street office. (See id. ¶¶ 18, 26.) He also notes his difficulty wearing a mask while commuting to the 1 Centre Street location, which was required at the time he requested that accommodation. (See id. ¶ 17.) Finally, he makes conclusory allegations stating that he suffered "emotional anguish," was "humiliated," and "demeaned," (see AC ¶ 48), but does not allege any facts to support these injuries.

Plaintiff relies on Diaz v. Viagran to establish that a revocation of a disability accommodation constitutes an adverse action under the ADA. (See Pl. Opp. at 9-10 (citing Diaz v. Viagran, No. 16-CV-9106 (CM), 2018 WL 4360790, at *9 (S.D.N.Y. Aug. 29, 2018)) ("The revocation of Plaintiff's long-standing disability accommodations is an adverse employment action." (cleaned up)). In Diaz, a long-time school teacher with severe respiratory issues was provided certain accommodations that allowed her to continue teaching in person. See 2018 WL 4360790, at *1-2. Diaz, the teacher, had held those accommodations for seven years before they were unilaterally revoked by a new principal. See id. at *2-3. This revocation caused Diaz to suffer severe symptoms at work, sending her to the hospital several times, and ultimately forcing her to take medical leave and a reduced salary. See id. at *9. The court determined that these consequences had a materially adverse effect on Diaz's employment and thus concluded

that the unilateral repeal of her accommodations constituted an adverse employment action. See id.

Plaintiff's case is distinguishable from Diaz. Plaintiff has not alleged that he suffered any materially adverse change in his working conditions due to the alteration of his accommodation. As noted above, in Diaz, the sudden revocation of the plaintiff's accommodations ultimately forced her to take medical leave and a reduced salary because she was not able to work without said accommodations. See id. The consequences Diaz suffered are akin to the types of alterations to working conditions that the Court of Appeals has found to be materially adverse. See Fox, 918 F.3d. at 71-72.

By contrast, Plaintiff's return to the 1 Centre Street location constitutes nothing more than an inconvenience that does not qualify as a materially adverse employment action. See Montanile v. Nat'l Broad. Co., 211 F. Supp. 2d 481, 486 (S.D.N.Y. 2002), aff'd, 57 F. App'x 27 (2d Cir. 2003) (granting defendants' motion for summary judgment on Title VII discrimination claim because "mere changes in working conditions that cause[d] [Plaintiff] some inconvenience d[id] not constitute adverse employment actions as a matter of law."); see also Felix v. N.Y. City Dep't of Educ., 2023 WL 4706097, at *7 (S.D.N.Y. July 24, 2023) (no materially adverse action where "Plaintiff's salary, job benefits and job responsibilities" remained the same and alleged

embarrassment and humiliation did not affect the terms of her employment). Plaintiff appears to have worked in the 1 Centre Street location five days a week prior to March 2020 and has been doing so at a part-time rate since March 2022. With respect to the actual conditions of his 1 Centre Street office, all Plaintiff alleges is that it "lack[s] [] ventilation," has "poorly regulated" climate and temperature control, is an "extremely warm and dusty room," and lacks windows that he can open. (See AC ¶¶ 18, 26.) However, unlike in Diaz, Plaintiff has not alleged that he has ever had to go the hospital, take leave, or take a reduced salary as a result of these conditions. Significantly, courts in the Second Circuit have rejected ADA discrimination claims supported only by alleged instances of mere inconvenience that did not reach the severity of the consequences the plaintiff suffered in Diaz. Compare Crawford-Bey v. N.Y. & Presbyterian Hosp., 08-cv-5454 (RJS), 2011 WL 4530193, at *5-6 (S.D.N.Y. Sept. 30, 2011) (no adverse employment action where defendant assigned plaintiff to "a small, windowless office" "without [access] to proper ventilation, lighting and with a very offensive smelling bathroom"); with McAllister v. Metro. Transit Auth., 2013 WL 4519795, at *6 (E.D.N.Y. Aug. 26, 2013) (holding that employer's refusal to fix air conditioning unit where plaintiff worked, which forced plaintiff to "work[] in extreme temperatures despite his heart condition, [and] led to him suffering heat exhaustion and being

hospitalized" constituted an adverse employment action). Accordingly, Plaintiff's argument that being forced to work in the 1 Centre Street location or having to wear a mask on his commute to the office constituted an adverse employment action fails without additional allegations that he suffered adversities to such a severe extent.

Plaintiff has not even made a concrete allegation about how, specifically, his respiratory issues deteriorated as a result of his not receiving his preferred accommodation, let alone that he suffered to the extent typically required to sustain a claim under the ADA. See Montanile, 211 F. Supp. 2d at 486; see also Felix, 2023 WL 4706097, at *7. Thus, because Plaintiff has failed to allege that the consequences of Defendants' requirement that he work in the 1 Centre Street location were of the severity required to plead plausibly that he suffered a materially adverse action, his reassignment to working part-time in the 1 Centre Street location does not give rise to a disability discrimination claim.

Therefore, Plaintiff's ADA Discrimination claim is DISMISSED.

## B. Failure to Grant Reasonable Accommodation Under The ADA and NYCHRL

Plaintiff alleges that Defendants' refusal to let him work entirely remotely or from the SIBC constitutes a failure to grant a reasonable accommodation under the ADA and the NYCHRL. For the following reasons, the Court dismisses Plaintiff's claims.

The ADA requires an employer to afford reasonable accommodation of an employee's known disability unless the accommodation would impose an undue hardship on the employer. See 42 U.S.C. § 12112(b)(5)(A). To make out a prima facie failure to accommodate claim under the ADA, an employee must allege that: "(1) [he] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [the employee] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 97 (2d Cir. 2009) (internal quotation marks omitted); see also Noll v. Int'l Bus. Machines Corp., 787 F.3d 89, 94 (2d Cir. 2015). Courts apply the same standard for failure to accommodate cases under the NYCHRL that they apply for such claims brought pursuant to the ADA. See Lawtone-Bowles v. City of New York, No. 17 Civ. 8024, 2019 WL 652593, at *6 (S.D.N.Y. Feb. 15, 2019) (citing Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999)).

The plaintiff has the initial burden of showing that his requested accommodation is facially reasonable. See Frilando v. N.Y.C. Transit Auth., 463 F. Supp. 3d 501, 514 (S.D.N.Y. 2020) (citing Wright v. N.Y. State Dep't of Corrs., 831 F.3d 64, 76 (2d Cir. 2016)). It is only after the plaintiff makes this showing

that the burden shifts to the defendant to demonstrate that the accommodation would cause an undue hardship. See id.

Defendants do not dispute that Plaintiff has a disability and that they had notice of his disability. (See generally MOL in Support.) Nevertheless, Plaintiff's failure to accommodate claim fails because he does not sufficiently allege that his requested accommodation permits him to perform the job's essential functions.

Courts give "considerable deference to an employer's determination as to what functions are essential," McMillan v. City of New York, 711 F.3d 120, 126 (2d Cir. 2013), but what that phrase means in any individual case "depends on the totality of the circumstances," Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 120 (2d Cir. 2004), and requires a "fact intensive" analysis, Lavender v. Verizon N.Y. Inc., No. 17-CV-6687, 2023 WL 1863245, at *16 (E.D.N.Y. Feb. 9, 2023) (citing Hunt-Watts v. Nassau Health Care Corp., 43 F. Supp. 3d 119, 127 (E.D.N.Y. 2014)). For that reason, "the nature of a job's essential functions" is often "ill-suited for resolution on a motion to dismiss." Schwartz v. Middletown City Sch. Dist., No. 23-CV-1248 (KMK), 2024 WL 1257095, at *4 (S.D.N.Y. Mar. 25, 2024) (quoting Crosby v. Stew Leonard's Yonkers LLC, 695 F. Supp. 3d 551, 570 (S.D.N.Y. 2023)).

However, at the pleading stage, "the plaintiff still bears the initial 'burden of showing that [an] accommodation exists that

15

permits [him] to perform the job's essential functions.'" Id. (quoting Schneider v. Wal-Mart Stores, Inc., No. 16-CV-2010, 2019 WL 294309, at *6 (S.D.N.Y. Jan. 23, 2019)); see also Forgione v. City of New York, No. 11-CV-5248, 2012 WL 4049832, at *8 (E.D.N.Y. Sept. 13, 2012) (plaintiff "must plead that he requested a reasonable accommodation that would have allowed him to perform the essential functions of his job") In Forgione v. City of New York, the plaintiff requested "some time off so he could address his medical condition." See 2012 WL 4049832, at *9. The court dismissed the plaintiff's complaint because it did not state "whether and how the leave would allow him to perform the essential functions of his job[.]" Id.; see also Zabar v. N.Y. City Dep't of Educ., 18 Civ. 6657, 2020 WL 2423450, at *5 (S.D.N.Y. May 12, 2020) (dismissing ADA claim where plaintiff failed to allege that she could perform the essential functions of her position with a reasonable accommodation).

Plaintiff fails to carry that burden at this early stage. The Amended Complaint does not contain any well-pleaded factual allegations that detail what the essential functions of Plaintiff's job are or how he can accomplish them while working completely remotely or on a hybrid schedule in which he works from the SIBC some days of the week. The only allegations Plaintiff makes that touch on this requirement are conclusory and simple recitations of the pleading requirements. First, he alleges he is

16

a "qualified individual with a disability who, with reasonable accommodation, can perform the essential functions of his employment position." (<u>See</u> AC ¶ 43.) Second, he alleges "[w]ith a reasonable accommodation, [he] could perform the essential function of his job[.]" (<u>See</u> AC ¶ 54.)

Reading the Amended Complaint in light most favorable to the Plaintiff, it appears that he implicitly wants the Court to assume that because Defendants allowed him to work remotely full-time from the beginning of the COVID-19 Pandemic until March 2022 he must have been able to perform his essential job functions. Even if the Court were to make such assumption, more factual allegations would still be needed to allege plausibly that he could have performed all his essential functions from home or the SIBC. <u>See</u> <u>Stanley v. City Univ. of New York</u>, No. 18 CIV. 4844 (PAE), 2023 WL 2714181, at *20 (S.D.N.Y. Mar. 30, 2023), <u>aff'd sub nom.</u> <u>Stanley v. Phelon</u>, No. 23-731-CV, 2024 WL 1453872 (2d Cir. Apr. 4, 2024) (dismissing failure to accommodate claim because plaintiff's only allegation that he was able to perform the essential functions of his job while working remotely was that he had "satisfactorily perform[ed] all his essential duties remotely and without issue for at least 14 months" during the pandemic). To satisfy this requirement, Plaintiff would still need to "address whether [his employer's] needs and [his] responsibilities <u>after</u> the initial stage of the pandemic, when he had worked remotely, tracked those

17

thereafter." Id. (emphasis added); see also Rogers v. Niagara Cnty., N.Y., No. 22-cv-00792 (JLS) (MJR), 2023 WL 10949028, at *6 (W.D.N.Y. Sept. 13, 2023), report and recommendation adopted, 2024 WL 1298116 (W.D.N.Y. Mar. 27, 2024) (dismissing plaintiff's ADA complaint for failing to allege how requested accommodation to work from a different office would allow him to perform essential functions of job). As these recent cases addressing remote work show, it is Plaintiff's burden to allege well-pleaded factual statements that describe how his requested accommodation to work from his preferred locations would allow him to perform his essential job functions. Because Plaintiff fails to do so here, his ADA and NYCHRL failure to accommodate claims are DISMISSED.

### C. Failure to Engage in Cooperative Dialogue in Violation of the NYCHRL

Plaintiff claims that Defendants failed to engage in a cooperative dialogue with him regarding his accommodation request in violation of the NYCHRL. (See AC ¶ 72.) For the following reasons, this Court dismisses Plaintiff's claim.

The NYCHRL provides that "[i]t shall be an unlawful discriminatory practice for an employer, labor organization or employment agency or an employee or agent thereof to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time" with an employee who has requested an accommodation. See N.Y.C. Admin. Code § 8-107(28)(a); see also

Goldman v. Sol Goldman Invs. LLC, No. 20-CV-6727 (MKV) (SN), 2022 WL 6564021, at *5 (S.D.N.Y. Aug. 5, 2022), report and recommendation adopted, 2022 WL 4482296 (S.D.N.Y. Sept. 27, 2022). That process involves "good faith . . . written or oral dialogue concerning the person's accommodation needs, potential accommodations that may address those needs, and the difficulties that such accommodations may pose for the covered entity." Heiden v. New York City Health & Hosps. Corp., No. 20-CV-10288 (LJL), 2023 WL 171888, at *33 (S.D.N.Y. Jan. 11, 2023) (internal quotations and citations omitted). The failure to engage in a cooperative dialogue is independently actionable under the NYCHRL. See Goldman, 2022 WL 6564021, at *5.

It appears that the parties do not dispute that the Defendants are employers or that the Plaintiff is an employee under the NYCHRL. The primary disagreement is whether the Defendants engaged in a cooperative dialogue with Plaintiff about his requests to work remotely or from the SIBC. To support this claim in the Amended Complaint, Plaintiff asserts that: (1) "there was no attempt at engaging in cooperative dialogue as required by law"; (2) NYCDOF "did not engage in any interactive process and refused to consider or discuss [his] request" to work from the SIBC; (3) "Defendants failed to engage in a cooperative dialogue . . . by failing to communicate in good faith and in an effective manner with [him] [about] his need for accommodations and . . . his []

19

needs with regard to accommodations"; and (4) he "was berated by" a NYCDOF investigator. (See AC ¶¶ 28, 37, 72.)

Plaintiff's first three allegations are conclusory because they do nothing more than restate the pleading requirement of the NYCHRL. See Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007))).  Accordingly, they do not constitute plausible allegations to support Plaintiff's claim against Defendants. See id. at 678-79.

Moreover, although Plaintiff alleges he suffered Defendants' beratement, Plaintiff's other allegations are sufficient to undercut Plaintiff's claim and render it implausible because they show Defendants did engage in a cooperative dialogue. These include Plaintiff's allegations that, over the course of approximately a year-and-a-half, Defendants (1) allowed Plaintiff to submit reasonable accommodation applications, (2) considered and resolved those accommodation requests, (3) provided status updates regarding his requests, (4) provided Plaintiff the rationale for their decisions, (5) considered and resolved Plaintiff's appeals, and (6) partially granted his second appeal by granting an accommodation. (See AC ¶¶ 16, 21-23, 27, 30-32, 35-36.) Most

important, Plaintiff even alleges that Defendant did not flat out reject Plaintiff's accommodation request. Rather, Defendants offered Plaintiff an alternative accommodation that—while it did not allow him to work from the SIBC—allowed him to work remotely for at least some of the week. (See AC ¶ 27, 35.) These allegations do not permit an inference of a failure to engage in cooperative dialogue but rather of Defendants' effort to engage in such dialogue. See Rochelle v. AutoZoners, LLC, No. 21-CV-01220 (PMH), 2023 WL 5935835, at *16 (S.D.N.Y. Sept. 12, 2023) (offering plaintiff alternative forms of accommodation is indicative of engaging in a cooperative dialogue). Accordingly, the Amended Complaint lacks sufficient well-pleaded factual statements alleging that the Defendants failed to engage in a cooperative dialogue.

Therefore, Plaintiff's claim that Defendants failed to engage in a cooperative dialogue is DISMISSED.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion, (see dkt. no. 15), is GRANTED in its entirety. The Court grants without prejudice Defendants' motion to dismiss Plaintiff's (1) ADA Discrimination claim, (2) ADA Failure to Accommodate claim, (3) NYCHRL Failure to Accommodate claim, and (4) NYCHRL Failure to Engage in Cooperative Dialogue claim.

Plaintiff may propose a second amended complaint no later than thirty days from the entry of this Opinion and Order.

The Clerk of the Court is respectfully directed to close docket entry number 15.

**SO ORDERED.**

Dated:      August 14, 2024
            New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge