UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
EMIL CANGRO,

                 Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF
FINANCE, et al.,

                 Defendants.
```

No. 23-CV-10097 (LAP)

MEMORANDUM AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

　　The Court is in receipt of the parties' letters, (see dkt. nos. 36-38), regarding Plaintiff's Proposed Second Amended Complaint, (see dkt. no. 36-1 ["PSAC"]).  The Court treats the parties' respective letters as Plaintiff's motion to amend his First Amended Complaint, Defendants' brief in opposition, and Plaintiff's reply.

　　Following the Court's dismissal without prejudice of Plaintiff's First Amendment Complaint, (see dkt. no. 31 [the "Opinion"]), the Court directed Plaintiff to submit a letter (1) explaining how a second amended complaint would cure the pleading deficiencies in the First Amended Complaint that the Court identified in its Opinion and (2) asking the Court to accept a proposed second amended complaint.  (See dkt. no. 36.)  Plaintiff has provided his Proposed Second Amendment Complaint with redlines illustrating edits he made to the First Amendment Complaint.  (See dkt. no. 36-1.)

Because the edits Plaintiff has made in his Second Amended Complaint do not cure the pleading deficiencies the Court identified in its Opinion or otherwise do not satisfy the pleading standards for his claims, Plaintiff's motion to amend his First Amended Complaint and his request to file the Proposed Second Amended Complaint are denied.  Accordingly, the First Amended Complaint, (see dkt. no. 4 ["FAC"]), is dismissed with prejudice, and the Clerk of the Court is directed to terminate the instant case.

## I.   **Background**

The Court assumes basic familiarity with the facts and procedural background but will briefly recount the essential facts.

Plaintiff, an employee of the New York City Department of Finance ("NYCDOF"), filed a First Amended Complaint on November 16, 2023.  (See FAC.)  His complaint stemmed primarily from NYCDOF's denials of his 2022 requests to work either from home or from the Staten Island Business Center ("SIBC"), rather than from NYCDOF's office at 1 Centre Street in Manhattan, after he had worked remotely during the COVID-19 Pandemic.  Specifically, he alleged Defendants (1) discriminated against him under the Americans with Disabilities Act ("ADA") by refusing to let him work either from home permanently or from the SIBC, (2) failed to grant a reasonable accommodation under the ADA and New York City

Human Rights Law ("NYCHRL") by denying his request to work either from home permanently or from the SIBC, and (3) failed to engage with him in the cooperative dialogue required under the NYCHRL. (See id. ¶¶ 39-74.)

After the Court dismissed the First Amended Complaint without prejudice and permitted Plaintiff to propose a Second Amended Complaint, Plaintiff filed his letter attaching the Proposed Second Amended Complaint, which he argues cures the deficiencies the Court identified when it dismissed his First Amended Complaint. (See dkt. no. 36.)

## II.  **Legal Standard**

Federal Rule of Civil Procedure 15(a)(1) permits a party to amend its pleading "once as a matter of course" within twenty-one days of service of the pleading or within twenty-one days of the service of the opposing party's responsive pleading or responsive motion.  See Fed. R. Civ. P. 15(a)(1).  However, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  The Court should freely give the party leave to amend "when justice so requires."  McCracken v. Verisma Sys., Inc., 91 F.4th 600, 609 (2d Cir. 2024) (quoting Fed. R. Civ. P. 15(a)(2)).  However, the Court "may deny leave to amend 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'"  Cohen v. Am. Airlines, Inc., 13 F.4th 240,

3

247 (2d Cir. 2021) (quoting TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014)).

**III.** **Analysis**

With respect to Plaintiff's claim for discrimination under the Americans with Disabilities Act ("ADA"), which the Court dismissed in its Opinion for Plaintiff's failure to plead plausibly that he had suffered an adverse employment action, the Court finds Plaintiff's proposed amendments would still fail to state a plausible claim for relief.

Plaintiff alleged in his First Amended Complaint and alleges again in his Proposed Second Amended Complaint that Defendants discriminated against him by failing to provide him with the requested accommodations of working from home or from a location in Staten Island. (See FAC ¶¶ 45-48; PSAC ¶¶ 60-63.)  In its Opinion, the Court found that Plaintiff's allegations that Defendants denied his requests and required him to work in-person several days per week, that he struggled to wear a mask on his commute on public transportation, and that he had to work in a warm, dusty, and windowless room with poor temperature control did not constitute the type of "materially adverse" employment action sufficient to state a claim for discrimination under the ADA. (See Opinion at 9-12.)  Plaintiff's primary proposed amendment to remedy this pleading deficiency is an additional allegation that he "suffered asthmas [sic] attacks and shortness of breath while

4

in" the dusty, windowless office and "on multiple occasions[] needed to leave to obtain immediate treatment to regain his ability to breathe." (See PSAC ¶ 24.)  He also clarifies that he requested to work from home because he had difficulty "perform[ing] his duties at work after commuting from his home . . . while wearing a mask[,]" which was required on New York's public transportation system during the COVID-19 Pandemic.  (See id. ¶ 22.)

Despite Plaintiff's edits, his Proposed Amendment would still fail to state a plausible claim for discrimination under the ADA.

The Court acknowledges that in Muldrow v. St. Louis, the Supreme Court held that a plaintiff asserting a claim for discrimination under Title VII need not allege that the resulting change she suffered in her employment was significant, serious, or substantial.  601 U.S. 346, 354-55 (2024).  This holding applies to discrimination claims brought under the ADA as well.  See Mitchell v. Planned Parenthood of Greater N.Y., 2024 WL 3849192, at *9 (S.D.N.Y. Aug. 16, 2024).  Although this recent change in the pleading standard for ADA discrimination cases may have lowered the threshold to allege adequately that a plaintiff suffered an adverse employment action, Plaintiff's proposed changes still would not resuscitate his claim.

Crucially, Plaintiff does not allege with sufficient particularity when or how frequently he "suffered asthma[] attacks and shortness of breath" or "needed to leave to obtain

treatment[.]" (PSAC ¶ 24.) As the Court stated in its Opinion, Plaintiff indicates that he had been working in the windowless, dusty, warm room at 1 Centre Street for four years between 2016— when he was diagnosed with COPD and bronchiectasis—and the onset of the COVID-19 Pandemic. (See Opinion at 2, 12; see also PSAC ¶¶ 12-13, 19.) Thus, Plaintiff has not alleged that Defendants' purported discriminatory act—refusing to grant his requested accommodation of working from home or in a location in Staten Island (see PSAC ¶¶ 60-63)—predated or precipitated these adverse health outcomes. In other words, by failing to specify whether he suffered asthma attacks or shortness of breath before or after Defendants denied his remote work requests, Plaintiff's proposed amendment fails to plead plausibly that the purported discriminatory act resulted in an adverse employment action.

It is for similar reasons that Plaintiff's proposed amendment separately fails because it does not plausibly allege discriminatory intent. As the Court addressed in its Opinion, a Plaintiff asserting an ADA discrimination claim must allege that he or she suffered an adverse employment action because of his or her disability. (See Opinion at 7 (citing Dooley v. JetBlue Airways Corp., 636 F. App'x 16, 21 (2d Cir. 2015) (summary order)).)

It is Plaintiff's burden to allege "facts providing at least minimal support for the proposition that" Defendants' decision to

deny his accommodation request was "motivated by discriminatory intent based on Plaintiff's" disability or that the disability "was a but-for cause of any adverse employment action." Mitchell, 2024 WL 3849192, at *14 (internal quotations and citations omitted).  But neither in his First Amended Complaint nor in his Proposed Second Amended Complaint does Plaintiff plead any facts that his accommodation requests were denied or that he was forced to work in an unpleasant room "because of [his illness] or any facts supporting that" such "was the product of disability-based discriminatory animus." Crawford v. Bronx Cmty. Coll., 2023 WL 11862082, at *8 (S.D.N.Y. July 19, 2023) (emphasis in original), R&R adopted, 2024 WL 3898361 (S.D.N.Y. Aug. 21, 2024).  Without any such allegations, Plaintiff's Proposed Second Amended Complaint still does not adequately plead an ADA discrimination claim.  See id.; Mitchell, 2024 WL 3849192, at *14.

Plaintiff also fails to cure the failure-to-accommodate claims he brings under the ADA and the NYCHRL, which the Court dismissed because Plaintiff did not plausibly allege that his working from home or at the SIBC would permit him to fulfill the essential functions of his job even after the end of the COVID-19 Pandemic.  (See Opinion at 16-18.)

Plaintiff now proposes allegations that his job requires him to "answer[] emails and hard mail correspondence from the public, answer[] telephone inquiries, respond[] to Siebel Service

requests, and work[] on special projects for the Division of External Affairs." (PSAC ¶ 14.) He states that Defendant NYCDOF "changed the procedures for responding to hard mail correspondence" during the COVID-19 Pandemic "by allowing employees to handle the correspondence from their homes," after which NYCDOF would reimburse them. (Id. ¶ 15.) He also inserts an allegation that, during the COVID-19 Pandemic, NYCDOF stopped "permit[ting] members of the public" from having "in person meetings with representatives from NYCDOF." (Id. ¶ 16.) Plaintiff's proposed edits would still fail to allege that he could perform the essential functions of his job if granted his requested accommodations.

First, taking as true Plaintiff's new allegations that answering "hard mail" is an essential function of his job and that the NYCDOF changed the policy for hard mail so that employees could "handle [such] correspondence from their homes[,]" it still would be insufficient to allege that Plaintiff could perform such a task under the new procedure through the accommodation that he actually requested. (Id. ¶¶ 14-15 (emphasis added).) That is because the only aspect of Plaintiff's most recent accommodation request that Defendants denied and over which he sues is his request to work several days per week from an office in Staten Island. (See id. ¶¶ 32, 40-42.) Plaintiff includes no new allegation that NYCDOF's new purported policy permitting employees to handle "hard mail"

from their homes would enable him to perform that task from the
SIBC where he requested to work several days per week.
Accordingly, he has failed to allege that he could perform the
"essential function" of handling hard mail correspondence if
NYCDOF granted the specific accommodation that he actually
requested.

In addition, Plaintiff fails to specify what handling "Siebel
Service requests" entails or how he could accomplish that either
from his home or from the SIBC.  The Proposed Second Amended
Complaint lacks any detail about how working anywhere other than
his office at the NYCDOF would enable him to perform this task.
Similarly, although Plaintiff now proposes to include that his job
requires him to "work[] on special projects for the Division of
External Affairs[,]" he does not allege with any particularity
what those "special projects" entail, including whether they
require meeting in-person with his colleagues at the NYCDOF or
with employees of other city agencies who do not work in Staten
Island.  (Id. ¶ 14.)  Thus, he again fails to specify how his
requested accommodation of working either from home or from the
SIBC would permit him to perform this function of his job.

Accordingly, the proposed amendments still fail to satisfy
Plaintiff's burden of pleading that he could perform the essential
functions of his job with a reasonable accommodation.  See McBride
v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009);

<u>Schwartz v. Middletown City Sch. Dist.</u>, 2024 WL 1257095, at \*4 (S.D.N.Y. Mar. 25, 2024).

 Finally, Plaintiff seeks to add a claim for retaliation under the ADA because he asserts (1) that his manager at the NYCDOF informed him in October 2022 that the New York City Department of Investigation ("DOI") was investigating him, which his manager told him only days later was merely a rumor he had inadvertently told Plaintiff, and (2) that same manager told Plaintiff in July 2024 that Plaintiff would not be promoted because of budget constraints, despite Plaintiff's high marks on the applicable promotional exam.  (See PSAC ¶¶ 43-52.)  He alleges Defendants retaliated against him because he had filed a hearing request with the Equal Employment Opportunity Commission ("EEOC"), for which the EEOC granted him a right to sue in August 2023.  (See <u>id.</u> ¶¶ 43-47.)

 Plaintiff's new retaliation claim would fail for two reasons.

 First, with respect to NYCDOF's failure to promote him, this alleged retaliation occurred far too late for the Court to draw an inference that Defendants had any retaliatory motive.  It occurred approximately twenty-two months after the date Defendants last denied his accommodation request and eleven months after he obtained a right to sue from the EEOC.  (See <u>id.</u> ¶¶ 40, 47.)  In retaliation cases, a plaintiff must plead plausibly that "(1) the plaintiff participated in a protected activity; (2) the defendant

knew of the protected activity; (3) the plaintiff suffered an adverse employment action; and (4) there is a causal connection between the plaintiff's protected activity and the adverse employment action she suffered." Moore v. Hadestown Broadway Ltd. Liab. Co., 2024 WL 989843, at *6 (S.D.N.Y. Mar. 7, 2024) (Title VII retaliation claim); see also Natofsky v. City of New York, 921 F.3d 337, 353 (2d Cir. 2019) (applying the same standard to a claim under the ADA). Where there is no direct evidence of discriminatory animus, the Court may infer causation indirectly by temporal proximity between the protected act and the retaliation. Littlejohn v. City of New York, 795 F.3d 297, 319 (2d Cir. 2015). Although the Court of Appeals has not precisely "drawn a bright line for defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation," it has held that "five months" is near that outer limit. Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010); see also Rightnour v. Tiffany & Co., 354 F. Supp. 3d 511, 527 (S.D.N.Y. 2019) (noting that a passage of more than two months typically does not allow for an inference of causation).

Thus, Defendants' alleged decision not to promote Plaintiff creates no inference of discriminatory intent because it occurred eleven months after he obtained his right to sue letter from the EEOC and twenty-two months after the NYCDOF rejected his

accommodation request for the final time, well beyond the "outer limit" of temporal proximity. <u>Gorzynski</u>, 596 F.3d at 110.

Second, with respect to his manager's informing Plaintiff that the DOI was investigating him, Plaintiff's own proposed pleadings undercut this allegation because they state that, only days after the manager made such comment, he then told Plaintiff that it "was apparently just a 'rumor' that wasn't true" and he was sorry for misinforming Plaintiff. (<u>See</u> PSAC ¶ 44.) Although Plaintiff asserts this was done as a threat to intimidate him, he has made no credible allegation to support that claim. His own admission that the person who informed him of the purported investigation quickly retracted that statement and apologized within days reveals no threat or intimidation. And the innocuous spreading of a rumor that Plaintiff alleges does not constitute the type of materially adverse employment action necessary to sustain a retaliation claim. <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006).

Thus, each of Plaintiff's amendments would be futile because Plaintiff would still fail to state any claim on which relief could be granted. <u>See</u> <u>Kim v. Kimm</u>, 884 F.3d 98, 105 (2d Cir. 2018) (proposed amendments are futile if they "would have no impact on the basis for the district court's" decision on a motion, including a motion to dismiss).

Accordingly, because Plaintiff's amendments would be futile, leave to amend is unwarranted under Rule 15(a)(2). <u>Cohen</u>, 13 F.4th at 247.

## IV.  <u>Conclusion</u>

For the foregoing reasons, Plaintiff's motion to amend and for leave to file a Second Amended Complaint are denied.  The Clerk of the Court is directed to mark the above-captioned case closed and all pending motions denied as moot.

**SO ORDERED.**

Dated:    October 25, 2024
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge